## FREDERICK NOLTE v. CITY OF CINCINNATI.

1. NEW STREET GRADES IN ANNEXED TERRITORY.

    Where in the territory of a certain road district adjacent to the city of Cincinnati, the authorities of said district had legally established the grade of one of the streets thereof, and said street prior to 1866 had been improved to said grade by paving, setting curbs, and flagging the sidewalks, the cost of which had been assessed against the adjacent property; and said road district was in 1871 legally annexed to said city, one of the provisions of annexation being "that all grades of streets heretofore established within and by the proper authorities of said village shall be respected; that the same may be altered with the consent of the property holders, or on payment of damages that may be agreed upon, or ascertained by law." And the city council of Cincinnati, having on the 11th of December, 1874, passed an ordinance for the change of the grade of such street, under which no steps were taken to obtain the consent of the adjacent proprietors thereto, or to agree on, or assess the damages resulting to them from such change of grade; or any action taken under the same until 1888, when these proceedings to assess such damages were commenced by the city. Held:

    In such proceeding it was competent for such owners to prove, that before such annexation to the city, the grade of the street in question had been established, and the street improved accordingly, and the cost assessed upon the abutting property.

2. GRADE ESTABLISHED BEFORE ANNEXATION AND COST ASSESSED.

    That under the circumstances disclosed, the court erred in the instruction given to the
    Vol. II. C. C.—19

jury, that there could be no recovery by any of such land owners, for any damage to any improvement made by them since the passage of the ordinance of 1874, resulting thereto from the change of such grade.

**3. DELAY OF CITY IS EVIDENCE OF ABANDONMENT OF INTENTION TO MAKE NEW GRADE.**

If the city, after the passage of the ordinance of 1874 took no steps to carry it out, or to obtain the consent of such owners, or to agree on the amount of the damages resulting from such change of grade, or to assess the same by law, until the commencement·of these proceedings in 1888, fourteen years thereafter, it was for the jury to determine under appropriate instructions whether the persons making such improvements had not; under the circumstances of the case, the right to presume that the city had abandoned the plan of changing such grade, and to improve their lots with reference to the existing grade.

**4. LOT OWNER MAY PRESUME NEW GRADE ABANDONED, IF CHANGE IS DELAYED UNREASONABLY.**

The city has not the right, by the mere passage of an ordinance for the change of a prior existing grade, and without taking the necessary steps within a reasonable time to carry it out, to prevent for an indefinite period the improvement of the adjacent property in conformity with an existing established grade. If such proceedings are not so taken, the city is not absolved from the payment of damages to property improved thereafter with reference to the existing grade.

ERROR to the Court of Common Pleas of Hamilton county.

Cox, J.

This is a petition in error to reverse a judgment of the court of common· pleas. The case in that court was brought to ascertain what damage, if any, the owners of property abutting on Vine street, within the limits described in the petition, sustained by improving and grading the street in accordance with the grade established by the city council of Cincinnati, December 11, 1874.

The owners of property claimed and sought to prove that prior to 1871, the territory covering said street was not a part of the city of Cincinnati, but was embraced in what was called "The Mt. Auburn, Walnut Hills and Clintonville Road District," and the street was called Washington street.

That prior to 1866, the street had been for many years improved as a turnpike, and many houses were built along it, and that in that year the authorities having control of the street passed an ordinance establishing the grade between the points in the petition named; in 1868 the street was improved to the established grade by grading, paving, setting curbs and flagging the side-walks, the cost and expense of which was assessed against the property-owners, and paid by them without claim for damages.

That afterwards, in 1871, the territory comprising said Road District was legally annexed to the city of Cincinnati, one of the provisions of annexation being, "that all grades of streets heretofore established within and by the proper authorities of said village shall be respected; that the same may be altered with the consent of the property-holders, or on payment of damages that may be agreed upon, or ascertained by law." Merrill's Ordinance, p. 19, art. 7.

That afterwards, on the 11th of December, 1874, the city council of Cincinnati passed an ordinance changing the grade of said street, but as is claimed by defendant, without the consent of the property-holders, and without the payment of any damages, either agreed, or ascertained by law.

It is claimed by plaintiff in error, that no attempt was made to carry into effect the ordinance of 1874, changing the grade, until the year 1888, and that the city has been guilty of such neglect in acting under it, as to induce property-holders to act in the belief that the city did not intend to enforce it; that the city stood by with full knowledge that the property-holders were improving to the existing grade of the street without regard to said ordinance of 1874, and did nothing to induce them to suppose that said ordinance would be enforced.

Under this state of the case, the defendant (plaintiff in error) sought to

prove that the street had been improved before it became part of the city of Cincinnati, and asked this question of a witness: "State whether or not the street was once improved by grading clear across the street, with macadamizing, and setting curbs, and assessed against the abutting property?" To the question the city objected, and the objection was sustained by the court; and plaintiff in error excepted to the ruling.

We think the question was a proper one, and should have been permitted to be answered, and in ruling it out the court erred. The question was an important one in the determination of the question as to the right of the city to change the grade without the consent of, or compensation to, those who, previous to the annexation of the territory, had been taxed for improvement to a fixed grade.

Another exception is taken to the charge of the court to the jury, which was as follows: "Should it appear that any of the improvements in question have been made since the grade of December, 1874, was established, they are by that fact placed beyond the reach of the present inquiry, and should not be considered by the jury.

"Improvements since that time must be presumed to have been made with knowledge of the existing grade-ordinance, and if they have not conformed to it, the fault is with the property owners, and not with the city, and no claim for damages will lie. The owners took the risk of disregarding the new condition of things, and they, if anybody, must suffer the consequences."

Admitting this to be the law when a grade has been legally established, does it apply to the present case?

There is no doubt that the city has the power to establish or change the grade of a street—and when so established the owner of abutting property must build according to that grade. And when no grade has been established, it is equally well settled that the property owners must build according to such future reasonable grade as may be established. And when he has improved his property according to an established grade, and it be changed by the city, he is entitled to recover for such damages as he may suffer.

Now, the testimony in this case shows that previous to the annexation of the territory in which this street is located, it was part of a special road district which had authority to, and did fix the grade of the street; that when the territory was annexed to the city, it was with the express agreement that that grade should be respected, and the power of the city council to alter it was limited to two conditions: First—That it be done with the consent of the abutting property owners; or, second—on payment of damages that may be agreed upon or ascertained by law; and any attempted alteration of grade without conforming to one or to the other of these conditions would not be binding on him.

The grade can only be altered or established by complying with existing laws, and if these laws be not substantially complied with, the grade is not established in legal contemplation:

It is admitted that the city council did attempt to alter the grade by ordinance of December 11, 1874; but it does not appear that either the consent of the property owners was obtained, or any damages agreed upon, paid, or ascertained by law, as the contract of annexation required, and which should precede the legal change of grade.

What were the rights of the abutting property owners between 1874 and 1888, when it is sought to ascertain his damages by reason of the change of grade?

In our opinion, the attempted change of grade in 1874 should have been followed within a reasonable time by the obtaining of the consent of the proprietor, or agreeing with him, or having ascertained by law the amount of his

damages; and the city failing within such reasonable time to do this, it would be a question for the jury to determine, under all the circumstances, whether the proprietor would not be authorized to treat the matter as if the city had abandoned the contemplated change, and proceed to occupy his lot with such improvements as he desired; and whether, if the city had delayed for an unreasonable time to actually change the grade, or obtain the consent of property holders, or ascertain damages as above, it would not be estopped to say that as to such improvements the grade had been changed before they were made. To say that, in a large city, where property is of so great value, and taxes high, the city can, by a mere paper ordinance, fix a grade which may require heavy cuts and fills to be made, and keep back any improvement according to the grade for a great many years, and prevent the abutting proprietor from making any improvements on his property except according to such grade, and which improvement may be entirely inaccessible until the grade is made, and which the city may never carry out, seems to us as sacrificing the interests of property holders in a manner the spirit of our law does not warrant.

We think, therefore, this charge to the jury was wrong, and it should have been given in accordance with the views we state, and the judgment of the court of common pleas will therefore be reversed.

Isaac J. Miller, for plaintiff in error.

Theodore Horstman, city solicitor, for defendant in error.

---

## WITNESSES.                                        508